**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **REGINALD JOHNSON,** | ) |
| | ) |
|     **Plaintiff/Counterclaim Defendant,** | ) |
| | ) |
| vs. | )     **CIVIL ACTION NO. 05-391-KD-B** |
| | ) |
| **MARILYN E. WOOD, individually** | ) |
| **and in her official capacity as Revenue** | ) |
| **Commissioner of Mobile County** | ) |
| **and MKH Properties, LLC,** | ) |
| | ) |
|     **Defendants/Counterclaim Plaintiff.** | ) |

**ORDER**

This matter is before the Court on MKH Properties, LLC's requests for this Court to conduct civil and criminal contempt proceedings and refer this matter to the United States Attorney for the Southern District of Alabama for prosecution for criminal contempt as contained in its "Motion to Reinstate Action" (Docs. 266, 281, 282), and MKH's motion for civil contempt as to Shirley Johnson, Viola Shaw and Jamiale Johnson (Docs. 283, 284).

**I.**      **Background**

MKH Properties, LLC ("MKH") contends that Reginald Johnson, Shirley Johnson-Young, Viola Shaw and Jamiale Johnson should be held in civil contempt for violating this Court's April 17, 2007 Memorandum Opinion and Order Granting Permanent Injunction (Doc. 211). MKH also contends that Reginald Johnson should also held in criminal contempt under 18 U.S.C. § 401 for violating the Injunction such that this matter should be referred to the United States Attorney for prosecution of criminal contempt charges.

The Court's April 2007 Injunction specified that "plaintiff, his agents, or anyone acting at

1

his direction are enjoined from filing, in Mobile County Probate Court, any complaint, claim for relief, grievance, writ, petition, accusation, affidavit, charge or any other document with respect to the real property at issue in this lawsuit." (Doc. 211 at 11-12). Included in this prohibition, based on <u>Martin-Trigona v. Shaw</u>, 986 F.2d 1384, 1387 (11th Cir. 1993) and citing the "close collaboration among Reginald Johnson's family in the past regarding the property," was "notice to the family that such conduct, as described in this order, is prohibited in the future." (<u>Id</u>. at 12). Further, the Amended Final Judgment states:

> ... in accordance with the Court's order granting MKH Properties injunctive relief (Count II of Counterclaim), Reginald Johnson, his agents, and anyone acting at his direction, are enjoined from filing, in Mobile County Probate Court, any complaint, claim for relief, grievance, writ, petition, accusation, affidavit, charge or any other document with respect to the real property at issue in this lawsuit.

(Doc. 213). In other words, the Court's 2007 Injunction and Judgment prohibited Reginald Johnson and his sisters Shirley A. Johnson-Young and Viola Shaw, his or their agents, or anyone acting at his or their direction from filing anything in Mobile County Probate Court with respect to the property[1] at issue – as well as notice "to the family" that such conduct is prohibited.

The 2007 Injunction (Book-6177, Page-427) and the Final Judgment (Book-6377 and Page-1418) were recorded in the Mobile County Probate Court. (Doc. 266 at 4). The

---

[1] The real property at issue is referred to as Parcel B, and described more particularly as follows:

That portion of the Southeast Quarter of the Northeast Quarter of Section 14, Township 2 South, Range 1 West, and that portion of the Southwest Quarter of the Northeast Quarter of Section 14, Township 2 South, Range 1 West, lying East of the Old John Craft Highway and the Southern Railroad, excepting therefrom approximately .56 acres now or formerly owned by Jewel E. Gunter and 5 acres in the Southeast corner of the Southeast Quarter of the Northeast Quarter now or formerly owned by Johnson or a Burden. Said 5 acres being 330 feet East and West and 660 feet North and South as measured from the Southeast corner of the Northeast Quarter of said Section 14.

declaration of Title Examiner Charles H. Grey (Doc. 266-3) concluded that once the Injunction and Final Judgment were recorded, title to Parcel B was clear.

On or around January 7, 2008, Reginald Johnson filed a document titled "Quite [sic] Claim Deed (Survivor-Ship)" in the records of the Mobile County Probate Court, Book-6315, Page-910. (Doc. 239-1 at 3-4).

On May 6, 2008, after determining that the *Quite* [sic] *Claim Deed (Survivor-Ship)* clouded its title, MKH filed a motion asking the court to reinstate the case for the limited purpose of conducting civil contempt proceedings against Reginald Johnson. (Doc. 239). The motion was granted and Reginald Johnson was ordered to show cause as to why he should not be held in contempt. (Doc. 240). On May 20, 2008, Reginald Johnson filed a written response admitting that he recorded the *Quite* [sic] *Claim Deed (Survivor-Ship)* " in the Mobile County Probate Court. (Doc. 241).

On October 2, 2008, this Court issued an order scheduling a show cause hearing because it "appear[ed] that the facts are undisputed that Johnson has violated the Court's injunctive order[,]" in which it was noted that "[t]he injunctive order at issue in this case is narrowly drawn and merely directs Mr. Johnson and his family to cease and desist the barrage of attacks on the title to the subject property[]" and "the injunction issued by this Court merely requires that Mr. Johnson and his family abide by the verdict handed down by a jury finding that his repetitive filings in Mobile County Probate Court constitute slander of title against property owned by MKH." (Doc. 246 at 5-6, 7).

On January 26, 2009, the Court held a show cause hearing to determine whether Reginald Johnson should be held in civil contempt for violating the Injunction. At the hearing, counsel

3

reported that the matter had been settled and that Reginald Johnson would execute a Quitclaim Deed to Parcel B and refrain from making any further claim to Parcel B, and that MKH would not execute on the Final Judgment unless Johnson violated the settlement agreement.

On January 28, 2009, the Court dismissed the action subject to the right of any party to reinstate within 20 days should the settlement agreement not be consummated. (Doc. 258). Subsequently, Reginald Johnson refused to execute the settlement agreement or Quitclaim Deed.

On February 16, 2009, MKH filed a second motion to reinstate and to reschedule the show cause hearing. (Doc. 259). The Court granted MKH's motion and set the hearing for March 24, 2009. (Doc. 261). Shortly before the hearing, Reginald Johnson executed the Quitclaim Deed, which MKH recorded on March 24, 2009 in Mobile County Probate Court (Book-6509, Page-966). According to MKH, at that time, the title to Parcel B was clear. (Doc. 266-3).

However, MKH asserts that on May 22, 2009,[2] Johnson or his niece Jamiale Johnson filed an Affidavit of Forgery in the records of the Mobile County Probate Court (Book-6556, Page-1598). (Doc. 266-2). MKH contends that "[t]he 2009 Affidavit of Forgery is almost identical in type font, spacing, lay-out and wording (including grammatical errors and misspellings) to the 2001 Affidavit of Forgery that was judicially determined to have been filed by Reginald Johnson and to constitute slander of title of Parcel B." (Doc. 266 at 6). According to Title Examiner Grey, this 2009 Affidavit clouds the title to Parcel B. (Id. and Doc. 266-3). MKH asserts that the "filing/recording of the 2009 Affidavit of Forgery by Reginald Johnson or

---

[2] According to the notary stamp, the Affidavit was signed and notarized on June 26, 2009, and moreover, per the Probate Court stamp, the affidavit was not filed until July 16, 2009 (Doc. 266-2 at 1-2).

4

someone acting as his agent or on his behalf directly violates the terms of this court's Injunction and was an intentional and knowing act constituting civil and criminal contempt of this court." (Doc. 266 at 6).

On April 14, 2010, this Court reinstated the case and set this matter for a show cause hearing and in so doing, required the attendance of both Reginald Johnson and Jamiale Johnson at said hearing. (Doc. 267).

On May 21, 2010, Reginald Johnson filed a memorandum in opposition asserting that he is not in contempt because he did not commit any violation of the Court's April 2007 order. (Doc. 272). Reginald Johnson contends that "at no time did he, his agent or anyone acting on his behalf or at his direction file said document[]" and "[m]ovant has failed to establish a nexus between Jamiale Johnson and Reginald Johnson such that would lead a reasonable person to believe that Jamiale Johnson acted as Reginald Johnson's agent[]" and/or "in concert with the filer." (Id. at 2-4). On June 4, 2010, this Court held a show cause hearing, at which time Reginald Johnson, Jamiale Johnson, K. Harless, and Fletcher Johnson testified as witnesses.

Subsequent to the hearing, MKH filed additional briefing and also filed a motion to hold Shirley Johnson-Young, Viola Shaw and Jamiale Johnson in contempt of the 2007 injunction based on the same facts alleged against Reginald Johnson. (Docs. 283, 284). A show cause hearing was held on September 30, 2010, at which time Reginald Johnson, Jamiale Johnson, Shirley Johnson-Young and Viola Shaw testified as witnesses.

## II. REGINALD JOHNSON

### A. Civil Contempt

Rule 65(d)(1)-(2) of the Federal Rules of Procedure defines the contents and scope of

every injunction and restraining order as follows:

> (1) Contents. Every order granting an injunction and every restraining order must:
>
>> (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required.
>
> (2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
>
>> (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

FED.R.CIV.P. Rule 65(d)(1)-(2).

"In order to prove civil contempt, the petitioning party must prove by clear and convincing evidence that the underlying order was violated." Securities and Exchange Comm'n v. Pension Fund of Am., L.C., 2006 WL 1104768, *9 (S.D. Fla. Mar. 23, 2006) (citing Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990)). See also E.A. Renfroe & Co., Inc. v. Moran, 508 F. Supp. 2d. 986, 993 (N.D. Ala. 2007); Reynolds v. McInnes, 338 F.3d 1201, 1211 (11th Cir. 2003); Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1296 (11th Cir. 2002). "This [ ] standard is more exacting than the 'preponderance of the evidence' standard, but . . . does not require proof beyond a reasonable doubt." Jove Eng'g v. I.R.S., 92 F.3d 1539, 1545 (11th Cir. 1996).[3] Accordingly, "[a]t the [show cause] hearing, allegations will no longer suffice and the plaintiff has the initial burden of producing evidence demonstrating by clear and

---

[3] "Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established—that is, evidence so clear, direct, weighty, and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." 7A FED. PROC., L.ED. § 17:36.

convincing evidence that the defendant has failed to comply with a prior court order." Wyatt ex rel. Rawlins v. Sawyer, 80 F. Supp. 2d 1275, 1278 (M.D. Ala. 1999). Only if the plaintiff meets this burden and thus makes out a *prima facie* case, does the burden shift to the defendant to demonstrate why he should not be held in contempt. Id.

Moreover, under this standard, the clear and convincing proof must also demonstrate that 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order. Securities and Exchange Comm'n v. Pension Fund of Am., L.C., 2006 WL 1104768, *7.

Once a district court finds a party in contempt, it has "broad discretion in fashioning a contempt sanction." Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1536 at n. 8 (11th Cir. 1986). Courts may impose sanctions for both coercive and compensatory reasons. Citronelle-Mobile Gathering, Inc., v. Watkins, 943 F.2d 1297, 1304 (11th Cir. 1991). Sanctions for civil contempt may be fashioned for two distinct purposes: (1) to coerce the contemnor to comply with a court order, or (2) to compensate a party for losses suffered as a result of the contemptuous act. E.E.O.C v. Guardian Pools, Inc., 828 F. 2d 1507, 1515 (11th Cir. 1987).

MKH contends that Reginald Johnson has violated the 2007 Injunction because "[he] or his niece Jamiale Johnson, acting as his agent or on his behalf[]" filed the 2009 Affidavit of Forgery. (Doc. 266 at 6). To support this contention and meet its evidentiary burden, MKH relies upon the existence of the 2009 Affidavit of Forgery filed in Mobile County Probate Court by Jamiale Johnson, Reginald Johnson's niece. Additionally, MKH elicited testimony from Reginald Johnson and Jamiale Johnson (regarding the 2009 Affidavit of Forgery filed by Jamiale

Johnson) at the show cause hearings. Although the Court finds Jamiale Johnson's testimony to be incredulous in some respects,[4] the evidence did establish that Jamiale Johnson prepared and filed the 2009 Affidavit of Forgery based on Reginald Johnson's 2001 Affidavit of Forgery. The evidence also supports a finding that Jamiale Johnson was aware of the injunction prohibiting her uncle, Reginald Johnson, from filing anything in Mobile County Probate Court with respect to the property at issue. However, although the affidavit filed by Jamiale Johnson in 2009 (Exhibit #1) replicates the 2001 affidavit (Exhibit #8) prepared by Reginald Johnson, it is apparent that the 2009 affidavit was entirely retyped; the 2009 affidavit contains three typographical errors not found in the 2001 affidavit. This fact is of significance because it tends to refute the inference that the 2009 affidavit was prepared from Reginald Johnson's computer data file containing the 2001 affidavit, which would have directly implicated Reginald Johnson.

MKH invokes the "aider and abettor" exception to the general rule prohibiting binding non-parties to an injunction as the basis of its request to hold Reginald Johnson in contempt. In support MKH cites E.A. Renfroe & Co., Inc. v. Moran, 338 Fed. Appx. 836, 839 (11th Cir. 2009) (unpublished) (stating that Rule 65 codified the "aider and abettor' exception by making clear that an injunction binds "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them[]") and Regal Knitwear Co. v. N.L.R.B., 324 U.S. 9, 14 (1945) (noting that Rule 65 requirements derive from the common-law doctrine that an injunction "not only binds the parties . . . but also those

---

[4] Jamiale Johnson repeatedly contradicted herself as to how she prepared the 2009 Affidavit of Forgery and had no credible explanation for the differences between that Affidavit and the prior Affidavit of Forgery filed by Reginald Johnson. It is the finding of the Court that Jamiale Johnson was not credible in some respects in her testimony before the Court. Accordingly, the Court has not relied on any testimony that Jamiale Johnson provided that was favorable to her or her family members.

identified with them in interest, in 'privity' with them, represented by them or subject to their control . . . . [the parties] may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding[]"). The Court agrees that non-parties such as Jamiale Johnson "may be subject to [the] court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party [here Reginald Johnson] in violating that order." S.E.C. v. Pension Fund of America, L.C., 2006 WL 1104768, *11 (citing United States v. Barnette, 129 F.3d 1179, 1185, n. 10 (11th Cir. 1997)). This is because "Rule 65 was intended to embody "the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." Id. at *12. See also Doc. 281.

However, MKH must prove by clear and convincing evidence that Reginald Johnson aided, directed or otherwise encouraged Jamiale Johnson in the violation. MKH has failed to do so. While the show cause hearing testimony indicates that Reginald Johnson provided his family members, including Jamiale Johnson, with copies of his court paperwork and filings throughout the years (including the 2001 Affidavit that he recorded which was similar in content to the 2009 Affidavit of Forgery) this standing alone is insufficient. Specifically, there is no evidence that the documents were provided by Reginald Johnson to Jamiale Johnson after the 2007 Injunction issued or that he counseled, encouraged or assisted Jamiale Johnson in filing the 2009 Affidavit. As stated previously, the 2009 Affidavit was based on a 2001 document prepared and filed against the property at issue by Reginald Johnson. As a result, the Court cannot find Reginald Johnson in contempt of the April 2007 Order & Injunction. Accordingly, it is hereby **ORDERED** that MKH's request for the Court to find Reginald Johnson in civil

contempt of the 2007 Injunction is **DENIED.**

B. <u>**Criminal Contempt**</u>

MKH also requests that this matter be referred to the United States Attorney for prosecution of criminal contempt charges against Reginald Johnson "for his defiance of the Injunction." (Doc. 266 at 11 (emphasis omitted)). MKH asserts that this Court should utilize its criminal contempt power under 18 U.S.C. § 401(3), to punish Reginald Johnson for contempt of the Court's authority as "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." MKH adds that under Rule 42(a) of the <u>Federal Rules of Criminal Procedure</u>, "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice."

As set forth in <u>In re McDonald</u>, 819 F.2d 1020, 1024 (11th Cir. 1987), there are three (3) "essential elements of criminal contempt." First, a court has to have entered "a lawful order of reasonable specificity." Second, that lawful order was violated. And third, the violation was "willful." MKH contends that all three (3) elements are present because the 2007 Injunction Order was of reasonable specificity and was willfully violated (as Reginald Johnson filed/recorded or caused the filing/recording of the 2009 Affidavit of Forgery, and this was willful because it would be the second time that he violated the Injunction). As set forth *supra*, MKH has failed to prove by clear and convincing evidence that Reginald Johnson violated the 2007 Injunction. While one element for criminal contempt is satisfied – that the 2007 Injunction Order is of reasonable specificity – the remaining elements have not been established.

For these reasons, it is hereby **ORDERED** that MKH's request to have this matter referred to the United States Attorney for prosecution of criminal contempt charges against

Reginald Johnson for his defiance of the Injunction is **DENIED.**

III. **CIVIL CONTEMPT AS TO NON-PARTIES**

At the show cause hearing on September 30, 2010, the evidence established the following:

1) Jamiale Johnson, Shirley Johnson-Young and Viola Shaw were all aware of and had read the 2007 Injunction.[5] Moreover, all three respondents were present at the March 2007 trial and verdict which was the basis of the injunctive order. Shirley Johnson-Young assisted Reginald Johnson in the defense of the slander of title claim. Viola Shaw was a witness for the Reginald Johnson. Jamiale Johnson attended the trial.

2) After the 2007 Injunction issued, Viola Shaw, Jamiale Johnson's aunt, provided Jamiale Johnson with documents including a previous affidavit of forgery that had been prepared to be filed against the property at issue. Viola Shaw also discussed with Jamiale Johnson her disagreement with the outcome of the March 2007 trial.

3) Jamiale Johnson used the documents from Viola Shaw to prepare a 2009 Affidavit of Forgery. Subsequently, Jamiale Johnson filed the affidavit of forgery in the Mobile Probate Court in direct contravention of the 2007 Injunction.

4) Based on the relationship between Viola Shaw and Jamiale Johnson, the discussions concerning the property and the outcome of the trial, and the timing of providing the

---

[5] Although the 2007 injunction contemplated service on Viola Shaw and Shirley Johnson-Young, Viola

documents to Jamiale Johnson, the Court finds that the documents were provided to Jamiale Johnson by Viola Shaw as an aid to be used in contravention of the 2007 Injunction.

**ACCORDINGLY,**

1) The Court finds that MKH has failed to establish by clear and convincing evidence that Shirley Johnson-Young should be held in contempt.

2) The Court finds by clear and convincing evidence that Viola Shaw, as an individual identified in the 2007 Injunction to be in interest and privity with Reginald Johnson, has knowingly and willfully violated the 2007 Injunction issued by this Court.

3) The Court finds by clear and convincing evidence that Jamiale Johnson, as an aider and abetter, has knowingly and willfully violated the 2007 Injunction issued by this Court.

4) The Court finds that the violated order was valid, clear, definite and unambiguous.

Accordingly, in order to reform their conduct to comply with the 2007 Injunction, the respondent Jamiale Johnson is **ORDERED** to sign by **October 8, 2010,** the necessary documents to withdraw the 2009 Affidavit of Forgery. To facilitate this order, MKH is **ORDERED** to prepare the documents for signing and provide same to counsel for the respondents on or before **October 5, 2010.**

---

Shaw and Shirley Johnson contend that they were not served with the injunction.

Because the Court finds that Viola Shaw and Jamiale Johnson knowingly and willfully violated the 2007 Injunction, the Court further finds that they are jointly liable for MKH's reasonable attorney fees that were incurred in attending the show cause motion hearing of September 30, 2010. MKH is **ORDERED** to submit, on or before **October 14, 2010,** documentation in support of any requested attorney fees.

**DONE** and **ORDERED** this the **1ˢᵗ** day of **October, 2010.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**